UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Natalia Ivanovna Kareva,

    Plaintiff,

        v.

                      Case No. 1:12cv267

United States of America, *et al.*,        Judge Michael R. Barrett

    Defendants.

**OPINION & ORDER**

    This matter is before the Court upon Defendant United States Motion for Summary Judgment (Doc. 31) and Plaintiff Natalia Ivanovna Kareva's Motion for Summary Judgment (Doc. 32). These Motions have been fully briefed. (Docs. 34, 35, 36, 37). In addition, Plaintiff has filed a Motion for Oral Arguments on the Motions for Summary Judgment (Doc. 38), which the Government opposes (Doc. 39).

    The Court does not deem that oral argument is essential to the fair resolution of this case pursuant to S.D. Ohio Civ. R. 7.1(b)(2). Therefore, Plaintiff's Motion for Oral Arguments on the Motions for Summary Judgment (Doc. 38) is DENIED.

**I.    BACKGROUND**

    The parties do not dispute the facts of this case. Plaintiff is a citizen of Russia who entered the United States on June 19, 2003 pursuant to a "nonimmigrant student visa." (Doc. 16-2). However, Plaintiff did not carry a full course of study, which made her subject to removal. (Id.)

    After arriving in the United States, Plaintiff filed an application for asylum and

withholding of deportation. (Doc. 14, ¶ 13). Plaintiff was interviewed, but because there were inconsistencies in her testimony, her application was referred to an immigration judge. (Doc. 1-1, at 39).

Plaintiff also filed an I-130 petition based on an individual she claimed to have married while in the United States. (Doc. 1-1, at 5). After Plaintiff was granted several continuances, the I-130 petition was denied. (Id.) On December 11, 2007, the immigration judge denied Plaintiff a further continuance to file a new I-130 petition based on the same marriage. (Id.) The immigration judge noted that Plaintiff had a valid passport and no known criminal record. (Id.) Therefore, the immigration judge granted Plaintiff's application for post-decision voluntary departure. (Id.)

> The immigration judge's order stated:
>
> The respondent must post a bond to the Department of Homeland Security in the amount of $1,000 within five business days. If the respondent fails to post the required bond or fails to depart as required, the privilege of voluntary departure shall be withdrawn immediately without further notice or proceedings, and the respondent shall be removed from the United States to Russia.
>
> The Court has noted the respondent has no relief available. The respondent earlier withdrew the application for asylum, and the respondent's I-130 has been denied, and therefore, the respondent has no relief available, and thus, the Court has entered a post-decision voluntary departure, and has entered a final order in the case today.

(Id. at 6). This order serves as the basis for Plaintiff's detention almost three years later.

Plaintiff appealed this order to the Board of Immigration Appeals. (Doc. 1-1, at 13). Plaintiff asked the BIA to reopen the matter and permit her to withdraw her plea of Voluntary Departure, strike any order of removal for failure to post the voluntary departure bond, and amend her pleading to reflect her asylum claim. (Id. at 17). Plaintiff explained that she had not posted the bond and "for this reason, she is facing a[n] Order

2

of Removal." (Doc, 1-1, at 26).

On June 30, 2009, the BIA rejected most of Plaintiff's arguments, including her request to reopen her case and reinstate her asylum application. (Doc. 1-1, at 53). However, the BIA did agree with Plaintiff that the immigration judge erred in granting voluntary departure:

> The respondent's prior attorney clearly stated at the respondent's final hearing that the responded "definitely does not want to take voluntary departure" (Tr. 31), but the Immigration Judge granted the respondent this form of relief in spite of this statement. Moreover, the record does not indicate that the Immigration Judge or the respondent's former attorney ever qualified the respondent for this relief. Given these circumstances, we vacate the Immigration Judge's grant of voluntary departure. Moreover, because the Immigration Judge did not provide the respondent with the opportunity to designate a country of removal, we remand the respondent's case to the Immigration Judge to allow the respondent to make this designation.

(Id. at 52). The BIA made it clear that the remand was "for the sole purpose of allowing the respondent to designate a country of removal." (Id. at 54).

However, on remand Plaintiff attempted to argue other issues. Plaintiff filed a successive asylum petition arguing "changed circumstances" in Russia. (Doc. 1-1, at 56, 59). After a hearing and oral decision on September 23, 2009, the immigration judge issued a written order noting that Russia was designated as the country for removal and that Plaintiff's motion to reopen was denied. (Doc.1-1, at 77). On September 24, 2009, Plaintiff appealed this order to the BIA. (Doc. 1-1, at 80). A copy of the appeal was served on Immigration and Customs Enforcement ("ICE") in Cleveland, Ohio. (Doc. 14, ¶ 23).

On March 23, 2010, ICE employees, believing that Plaintiff was subject to a final order of removal, processed Plaintiff for detention under 8 U.S.C. § 1231 but allowed

Plaintiff to be released on her own recognizance. ICE Special Agent Brian Gerson testified that he had previously received information from the ICE Regional Counsel's Office that Plaintiff was under a final order of removal. (Doc. 31-2, Brian Gerson Dep. at 19-20, 35).

On May 12, 2010, Plaintiff was detained for removal when she appeared in ICE's office in Columbus for her regular reporting. (Doc. 14, ¶ 25).

On May 13, 2010, Plaintiff filed a motion for stay of removal with the BIA. (Doc. 1-1, at 99). On May 19, 2010, the BIA denied the application for a stay of removal pending consideration of her motion to reopen. (Doc. 1-1, at 107). The BIA noted that "there is little likelihood that the motion will be granted." (Id.)

The same day, Plaintiff filed an appeal and emergency motion for stay of execution of order of removal with the Sixth Circuit Court of Appeals. (Doc. 1-1, at 109, 120). On May 28, 2010, an attorney for the Department of Justice moved to dismiss the appeal on jurisdictional grounds, arguing that there was no final order because of the BIA appeal was still pending. (Doc. 1-1, at 126). Plaintiff's attorney sent a copy of this motion to ICE. (Doc. 1-1, at 136). Upon learning of the Department of Justice's position that there was no final order, ICE changed Plaintiff's detention status and sought clarification from the BIA as to whether Plaintiff was under a final order of removal. (Docs. 16-4 & 16-5).

On June 1, 2010, Plaintiff's detention status was reclassified to being detained under 8 U.S.C. § 1226(a), which authorizes detention while an alien's removal proceedings are ongoing. (Doc. 16-4). Plaintiff was permitted to appeal this determination to an immigration judge, but there is no record that she did. Two days

4

later, ICE filed a motion with the BIA to expedite a decision on Plaintiff's second appeal to the BIA. (Doc. 16-5). This motion requested that the BIA determine whether the September 23, 2009 order was a final order of removal. (Id.)

On June 23, 2010, the BIA issued an order remanding the record to the immigration judge, explaining: "The Immigration Judge's order does not indicate why he denied the motion to reopen based on changed country conditions." (Doc. 1-1, at 157). In addition, the BIA explained: "we conclude that there is a final order of removal issued for the respondent, and that the country of removal is Russia (although there has been no final determination regarding the respondent's motion to reopen, in view of the foregoing remand)." (Doc. 1-1, at 158). Two days later, Plaintiff filed a motion to reconsider the BIA's order to the extent that the BIA found that Plaintiff was subject to a final order of removal. (Doc. 1-1, at 166).

On September 20, 2010, while the motion for reconsideration was still pending, Plaintiff's bond was reset to $1500.00, which Plaintiff posted. (Doc. 31-1, Kareva Dep. at 51). Plaintiff was then was released from custody. (Doc. 14, ¶ 40).

On October 7, 2010, the BIA reconsidered its determination that the immigration judge's September 23, 2009 decision was a final order of removal and granted Plaintiff's motion to reconsider. (Doc. 1-1, at 175) The BIA determined that when it remanded the record to the immigration judge on June 23, 2010, there was no final order because the decision did not dispose of all the issues decided by the immigration judge. (Doc. 1-1, at 176).

Plaintiff's only remaining claim is against the United States under the Federal Tort Claims Act. Plaintiff explains that her claim is based on her wrongful arrest and

5

detention by ICE employees.

## II. ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

### B. Jurisdiction

While it was not raised by the parties, this Court has an obligation to determine if the Immigration and Nationality Act ("INA") deprives this court of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *see also Answers in Genesis, Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009) ("[F]ederal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*.").

Section 1252(g) of the INA, which is entitled "Exclusive Jurisdiction," provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders

against any alien under this chapter.

8 U.S.C. § 1252(g).[1]  The INA defines an "alien" as "any person not a citizen or national of the United States."  8 U.S.C. § 1101(a)(3).  It is undisputed that Plaintiff is a citizen of Russia.  In addition, the Sixth Circuit has explained that "[w]hen Congress passed the Homeland Security Act of 2002, it transferred to DHS authority over all functions that the former Immigration and Naturalization Service ("INS") or its officers previously carried out, and therefore the statutory reference to the 'Attorney General' in § 1252(g) now means 'Secretary of DHS.'"  *Elgharib v. Napolitano*, 600 F.3d 597, 606-607 (6th Cir. 2010). Therefore, the sole question regarding the applicability of Section 1252(g) in this case is whether Plaintiff's claim arises from "the decision or action by the Attorney General to . . . execute removal orders."

In *Reno v. American–Arab Anti–Discrimination Committee*, 525 U.S. 471, 482, (1999) ("*AADC*"), the Supreme Court gave Section 1252(g) a narrow interpretation. The Court explained that Section 1252(g) does not preclude judicial review of all "decisions or actions that may be part of the deportation process" and did not apply to "the universe of deportation claims."  Instead, according to the Supreme Court:

> [t]he provision applies only to three discrete actions that the Attorney General may take: her "decision or action" to "*commence* proceedings, *adjudicate* cases, or *execute* removal orders."  There are of course many other decisions or actions that may be part of the deportation process—such as the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order.
>
> It is implausible that the mention of three discrete events along the road to

---

[1] The Court notes that 8 U.S.C. § 1252(a)(2)(D) permits judicial review of certain constitutional claims.  However, Plaintiff has not raised any constitutional challenges and section 1252(a)(2)(D) vests jurisdiction in the courts of appeals.

7

deportation was a shorthand way of referring to all claims arising from deportation proceedings.

*Id.* (emphasis in original).

In *Foster v. Townsley*, 243 F.3d 210 (5th Cir. 2001), the Fifth Circuit determined that Section 1252(g) barred claims analogous to Plaintiff's claims. In *Foster*, the plaintiff was a Jamaican native who brought claims under the FTCA against the INS for malicious prosecution, vexatious suit, and abuse of process, stemming from his arrest and detention on suspected immigration violations. The facts of the case are as follows:

> In November 1996, Foster was issued an order to show cause why he should not be deported after his conviction for an aggravated felony. Foster posted bond and was released from custody in March of 1997. The next month, his attorney, appearing telephonically for a scheduled hearing before the Immigration Judge, requested a continuance for the purpose of filing a motion to change venue. Although the Immigration Judge granted the motion and continued the proceedings, no motion for a change of venue was filed. In June of 1997, neither Foster nor his attorney appeared in New York for a scheduled hearing. Consequently, after determining that proper notice was provided and that deportability had been established, the Immigration Judge ordered that Foster, in absentia, be deported. In September 1997, through new counsel, Foster filed a motion to reopen the proceedings. The Immigration Judge denied his motion in November 1997. Foster appealed this decision to the BIA in December of 1997. In July of 1998, Foster submitted a motion to remand for the consideration of new evidence.
>
> That November, Foster filed a petition for a writ of mandamus in federal court to compel the BIA to rule on his appeal. The magistrate judge, in December of 1998, recommended that the petition be denied.
>
> Foster was deported to Jamaica in December of 1998, while his appeal with the BIA was still pending. In February 1999, the BIA sustained Foster's appeal and ordered that proceedings be reopened and the record remanded to the Immigration Judge. BIA found that the Immigration Judge had erred in denying Foster's motion to reopen the in absentia deportation order because there was a lack of evidence that written notice was sent to Foster's attorney via certified mail, as required by statute. The next month, Foster sought to re-enter the United States pending a decision on his appeal to the BIA. He was returned to the United States in May 1999.

8

*Id.* at 211. The Fifth Circuit concluded that "the particular acts that form the basis of Foster's lawsuit arise from the officials' decision to execute his removal order." *Id.* at 214. The court explained that his claims were "directly connected" to the execution of the deportation order. *Id.* The court decided that because the acts of the INS officials fell within the ambit of section 1252(g), the district court correctly concluded that it lacked jurisdiction over Plaintiff's FTCA claims.

Similarly, in *Sissoko v. Rocha*, 509 F.3d 947 (9th Cir. 2007), the Ninth Circuit held that under Section 1252(g), the district court lacked jurisdiction over the plaintiff's Fourth Amendment false arrest claim. In *Sissoko*, the plaintiff was a citizen of Senegal who over-stayed his visa but had applied for legalization with the INS.[2] When his father died, the plaintiff travelled to Senegal to attend the funeral.[3] Upon his return in the United States, an immigration inspection officer took the plaintiff into custody as an "arriving alien" without proper admission documents. The immigration officer ordered plaintiff detained after instituting expedited removal procedures against him. As a result of the immigration inspector's actions, the plaintiff spent nearly three months in detention. However, the Ninth Circuit held that because plaintiff's detention arose from the immigration inspector's decision to commence expedited removal proceedings, and therefore Section 1252(g) barred the plaintiff's claims.

Several district courts have held similarly. *See, e.g.*, *Alcaraz v. United States*, C-13-511, 2013 WL 4647560, *2 (N.D. Cal. Aug. 29, 2013) (Section 1252(g) bars FTCA false arrest and imprisonment claim based on decision to execute removal after a motion

---

[2] The facts of the case are found in the Ninth Circuit's withdrawn opinion: *Sissoko v. Rocha*, 440 F.3d 1145, 1149-1151 (9th Cir. 2006).

[3] The plaintiff asked for and received from the INS an advance parole document (Form I–512), which allowed a temporary resident to travel and return.

to reopen was filed); *El Badrawi v. Dep't of Homeland Sec.*, 579 F. Supp. 2d 249, 265 (D. Conn. 2008) (Section 1252(g) bars FTCA claims for malicious prosecution and vexatious suit, and abuse of process insofar as the process "abused" was issuance of Notice to Appear). *But see Turnbull v. United States*, 1:06CV858, 2007 WL 2153279 (N.D. Ohio July 23, 2007) (Section 1252(g) does not bar FTCA false imprisonment claim because plaintiff is not bringing a challenge based on the order of removal but instead is claiming damages that flowed from defendants' refusal to abide by order staying deportation issued in his habeas proceeding); *De La Paz v. Coy*, 954 F. Supp. 2d 532, 544-45 (W.D. Tex. 2013) (Section 1252(g) does not bar claim based on Fourth Amendment violations because injuries preceded the decision to commence removal proceedings); *Polanco v. United States*, 10CV1705, 2014 WL 795659, *2 (E.D.N.Y. Feb. 27, 2014) (Section 1252(g) does not bar FTCA false arrest and imprisonment claim where DHS agents conducting a transportation check in a train station arrested plaintiff after they were unable to locate his immigration record).

The Court finds that Section 1252(g) does apply in this case because Plaintiff's claim for false arrest and imprisonment arises from "the decision or action by the Attorney General to . . . execute removal orders." Pursuant to 8 U.S.C. § 1231, when an alien is subject to a final order of removal, "the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). During this 90-day removal period, "the Attorney General shall detain the alien." 8 U.S.C. § 1231(2). While it was later determined that the September 23, 2009 order of removal was not final at the time, there is no dispute that as of May 12, 2010—the date Plaintiff was detained for removal—Plaintiff was subject to an order of removal and Plaintiff's motion to reopen was

denied. Plaintiff's claims that she was wrongfully arrested and detained arise from the Government's decision or action to execute the September 23, 2009 removal order. Therefore, Section 1252(g) of the INA deprives this Court of jurisdiction over Plaintiff's FTCA claim.

### B. <u>Federal Tort Claims Act</u>

In the alternative, the Court finds that the Government is entitled to summary judgment on Plaintiff's FTCA claim.

The United States cannot be sued unless Congress expressly and unequivocally waives the government's sovereign immunity. *United States v. Bormes*, 133 S.Ct. 12, 16, (2012). As the United States Supreme Court has recently explained:

> The FTCA, enacted in 1946, "was designed primarily to remove the sovereign immunity of the United States from suits in tort." *Richards v. United States*, 369 U.S. 1, 6, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). The Act gives federal district courts exclusive jurisdiction over claims against the United States for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission" of federal employees acting within the scope of their employment. 28 U.S.C. § 1346(b)(1). Substantively, the FTCA makes the United States liable "to the same extent as a private individual under like circumstances," § 2674, under the law of the place where the tort occurred, § 1346(b)(1), subject to enumerated exceptions to the immunity waiver, §§ 2680(a)–(n).

*Levin v. United States*, 133 S. Ct. 1224, 1228 (2013). Therefore, "the extent of the United States' liability under the FTCA is generally determined by reference to state law." *Molzof v. United States*, 502 U.S. 301, 305 (1992).

While Ohio recognizes claims for both the tort of false arrest and the tort of false imprisonment, "[t]he tort of false imprisonment concerns 'purely a matter between private persons for a private end,' as opposed to a false arrest, which is an unlawful detention 'by reason of an asserted legal authority to enforce the process of law'." *Vasquez–Palafox*

*v. United States*, No. 3:12 CV 2380, 2013 WL 1500472, at *3 (N.D.Ohio Apr.10, 2013) (quoting *Rogers v. Barbera*, 164 N.E.2d 162, 164–65 (Ohio 1960)). Accordingly, this Court has held that any claim for false imprisonment against a government actor must fail. *Snyder v. United States*, 1:13-CV-00284, 2014 WL 47952, *5 (S.D. Ohio Jan. 7, 2014). Therefore, Plaintiff can only proceed on her FTCA claim to the extent that it is based on Ohio's tort of false arrest.

The elements of the tort of false arrest under Ohio law are: "(1) a detention of the person, and (2) an unlawful detention." *Thacker v. City of Columbus*, 328 F.3d 244, 261 (6th Cir. 2003) (quoting *Faulkner v. Faulkner*, 2000 WL 5910, at *1 (Ohio Ct. App. 2000)). "The tort does not require proof of malice, motive or lack of probable cause." *Id.* (quoting *Tucker v. Kroger Co.*, 726 N.E.2d 1111, 1115 (Ohio Ct. App. 1999)).

The United States has specifically waived its immunity "with regard to acts or omissions of investigative or law enforcement officers of the United States Government, . . . to any claim arising . . . out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution." 28 U.S.C. § 2680(h).[4] However, under the due care exception, the FTCA does not apply to "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid." 28 U.S.C. § 2680(a). The reservation of immunity in Section 2680(a) and the waiver of immunity in Section 2680(h) create a conflict when law enforcement officers commit intentional torts while performing discretionary functions. There is a split among the circuits whether a plaintiff

---

[4] In the past, courts held that INS agents met the criteria of an "investigative or law enforcement officer." *Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005). Similarly, courts have found that ICE agents are law enforcement officers within the meaning of Section 2680(h). *Lyttle v. United States*, 867 F. Supp. 2d 1256, 1297 (M.D. Ga. 2012) (*citing Nguyen v. United States*, 556 F.3d 1244, 1256–57 (11th Cir. 2009)).

12

asserting an intentional tort must also show that the law enforcement officer's conduct was not discretionary. *See Milligan v. United States*, 670 F.3d 686, 695, n.2 (6th Cir. 2012) (recognizing disagreement among the circuits regarding the interaction between § 2680(a) and § 2680(h) but finding it unnecessary to reach the issue).

The Court finds it unnecessary to reach a conclusion on this issue because even if Plaintiff was permitted to proceed with her claim for false arrest, that claim fails.

The Government argues that Plaintiff was not unlawfully detained because ICE had two grounds to detain her. First, the Government explains that 8 U.S.C. § 1231 provides that an alien under a final order of removal may be detained. Second, the Government explains that if Plaintiff was not under a final order of removal, she still could have been detained at the discretion of the Attorney General or his designee under 8 U.S.C. § 1226, which provides:

> (a) Arrest, detention, and release
>
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in [the subsection applicable to criminal aliens] and pending such decision, the Attorney General--
>
> > (1) may continue to detain the arrested alien; and
> >
> > (2) may release the alien on--
> >
> > > (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> > >
> > > (B) conditional parole . . .

8 U.S.C. § 1226.

Plaintiff argues that while there may have been some "confusion" as to whether the immigration judge entered an initial order of removal, on May 28, 2010, the Department of

13

Justice moved to dismiss her appeal on jurisdictional grounds, arguing that there was no final order because of the BIA appeal was still pending.[5]  The Government responds that after ICE employees learned of this argument, the Government evaluated her detention and determined that Plaintiff should remain detained.  The Government believed that if released, Plaintiff would not remain in the area because she had few ties to the area. (Doc. 31-2, Gerson Dep. at 28-30).  Plaintiff has not presented any evidence to demonstrate that this determination was incorrect or contrary to the law.  Therefore, the Court finds that Plaintiff has not proven that her detention was unlawful.  Accordingly, the Government would be entitled to summary judgment on any claim under the FTCA which was not barred by 8 U.S.C. § 1252(g).

### III.　**CONCLUSION**

Based on the foregoing, Plaintiff's Motion for Oral Arguments on the Motions for Summary Judgment (Doc. 38) is **DENIED**; Defendant United States Motion for Summary Judgment (Doc. 31) is **GRANTED**; and Plaintiff Natalia Ivanovna Kareva's Motion for Summary Judgment (Doc. 32) is **DENIED**.  This case shall be **CLOSED** and **TERMINATED** from the docket of this Court.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　　　　 */s/ Michael R. Barrett*　　　　
　　　　　　　　　　　　　　　　　　　　　　　　　　Michael R. Barrett
　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

[5] The Court notes that Plaintiff herself believed the order was final because she filed the application for a stay of removal with the BIA on May 15, 2010.  It was not until May 28, 2012 that any argument was made that there was no pending final order of removal.

14